MARINETTE, TOMAHAWK & WESTERN RAILROAD COMPANY, Appellant, vs. RAILROAD COMMISSION OF WISCONSIN and another, Respondents.

*March 6—April 3, 1928.*

*Carriers: Rates once established becoming unreasonable: Reparation upon new rate fixed: Recovery of overcharges.*

1. The practical construction of a statute long followed by the railroad commission, with the apparent acquiescence of the legislature as well as those affected thereby, is entitled to great weight. p. 465.
2. Under sec. 195.54, Stats., empowering the railroad commission to authorize reparation for a rate charged which is erroneous, illegal, unusual, or exorbitant, the commission had power to authorize a refund of charges on the basis of local rates for carriage as to which a joint rate had not been fixed, after establishing joint rates lower than the rates theretofore prevailing, since, though reparations are not permissible where the rates collected were sanctioned by orders of the commission, a charge based on local rates was not such as had been sanctioned or established. pp. 465, 466.
3. Although a rate once fixed by the commission may be charged by the railroad until changed in a lawful manner, if it becomes an unreasonable rate in view of changing conditions, the rail-

road may not keep and retain the overcharge collected by it between the time when the rate becomes unreasonable and the time when a new reasonable rate has been determined by the commission. p. 465.

4. The railroad commission, on fixing joint rates for intrastate shipments lower than previous charges based on local rates, had power to authorize reparation of charges made between the date of filing the petition with the commission and the date of its order, as well as charges made prior thereto. p. 468.

APPEAL from a judgment of the circuit court for Dane county: AUGUST C. HOPPMANN, Circuit Judge. *Affirmed.*

Plaintiff, *Marinette, Tomahawk & Western Railroad Company,* brought an action in the circuit court for Dane county to review an order of the *Railroad Commission* fixing rates and ordering reparations. From a judgment affirming the order of the *Railroad Commission* the plaintiff brings this appeal.

*R. T. Reinholdt* of Tomahawk, for the appellant.

For the respondents there was a brief by the *Attorney General* and *Suel O. Arnold,* assistant attorney general, and *Walter Drew* of Milwaukee, attorney for the *Tomahawk Kraft Paper Company,* and oral argument by *Mr. Arnold* and *Mr. Drew.*

OWEN, J. The respondent *Tomahawk Kraft Paper Company* instituted a proceeding before the *Railroad Commission* seeking to have the *Commission* fix joint rates on intrastate shipments of pulp wood moving over the lines of plaintiff and connecting lines, and for reparation of excessive charges made subsequent to February 1, 1924. The petition was filed March 4, 1924. A hearing was had on the petition on May 5 and 6, 1924. On April 27, 1926, the *Railroad Commission,* by its order, established joint rates, which were lower than the rates theretofore prevailing, and also determined that the *Tomahawk Kraft Paper Company* was entitled to reparation on all shipments of pulp wood made subsequent to January 31, 1924. This action is

brought to set aside that part of the order requiring reparation. The connecting lines involved in the order do not join, nor have they in any other manner challenged the order.

By sec. 195.54, Stats., upon complaint that any charge exacted by a carrier is "erroneous, illegal, unusual or exorbitant," the *Railroad Commission* is empowered to determine what would have been a reasonable charge for the service complained of, and if the rate or charge so found shall be less than the charge exacted, the carrier shall have the right to refund to the person paying such charge the amount so found to be excessive. Prior to the filing of this petition there was no established joint rate for the movements in question over plaintiff's lines. Upon such joint movements the rate charged was the sum of the local rates in force over the operating lines. These rates had been theretofore established by the *Railroad Commission*. It is claimed that because the rates charged were rates authorized by the *Railroad Commission* they were neither "erroneous, illegal, unusual or exorbitant," and that sec. 195.54 does not provide for reparation where the rates charged were lawfully exacted. This exact question was before the court in *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 158 Wis. 102, 147 N. W. 366. The court held that the order was subject to judicial review, but the Justices participating were equally divided upon the question of whether the *Railroad Commission* was authorized to grant a refund of charges based on rates fixed by the *Commission*. The judgment of the circuit court holding that the *Railroad Commission* had such power was therefore affirmed by a divided court. We shall not pause here to consider the force which should be accorded that decision under the doctrine of *stare decisis*. Seven legislatures have intervened since the decision was announced. The *Railroad Commission* has continued to exercise the power with the apparent acquies-

cence of the railway companies of the state.   If we were presently disposed to consider the proper construction of the statute doubtful, this practical construction of the statute long followed by the *Railroad Commission* with the apparent acquiescence of the legislature as well as those affected thereby, would be entitled to great weight.   *State ex rel. Owen v. Donald,* 160 Wis. 21, 151 N. W. 331; *State v. Johnson,* 186 Wis. 59, 202 N. W. 319.

But we are of the opinion that the statute should be accorded the construction which the *Railroad Commission* has placed upon it.   The statute empowers the *Railroad Commission* to authorize reparation where the rate charged is "erroneous, illegal, unusual or exorbitant."   The rates charged in this case were legal in the sense that the railroad companies did not subject themselves to penalties in their collection.   But it does not follow that they were lawful in the sense that they were reasonable.   The statute declares that all rates shall be reasonable.   A rate once fixed by the *Railroad Commission* may be charged by the railroad company until changed in a lawful manner.   The rate so collected is lawful and the railroad company incurs no penalty thereby.   But it does not follow that the rate, though lawful, continues to be reasonable in view of changing circumstances and conditions.   The reasonable rate remains at all times the lawful rate when we have in mind the rate prescribed by the legislature as the rate which the railroad company may take and retain for its own use and benefit. Although the railroad company may be entitled to charge and collect a rate fixed by the *Railroad Commission,* it does not follow that it is entitled to keep and retain such charge between the time it has become unreasonable and the time when a new reasonable rate has been determined by the *Railroad Commission.*   If the reparation statute were to receive the construction for which appellant contends, it would fall far short of accomplishing the purpose for which

it was enacted, which was (complementing other legislation upon the subject) to secure shippers in the enjoyment of lawful, which are reasonable, rates. At this time, probably every rate charged by railroad companies in the state has been fixed by the *Railroad Commission*. If those rates must be borne by shippers until the *Railroad Commission,* in the performance of its multiplicity of duties, can fix different rates, it is apparent that they will be subject to unreasonable charges for long periods of time in many cases.

But aside from these considerations, in the instant case the rate to which the *Railroad Commission* found the *Tomahawk Kraft Paper Company* entitled had never been fixed by the *Commission*. The *Commission* had never fixed a joint rate for the movements here in question. True, it had fixed local rates at which the railroad companies could be required to move shipments. But in railroad practice a joint rate is something different from the total of various local rates. A joint rate for these shipments had never been established either by agreement of the railroad companies involved or by order of the *Railroad Commission*. Even though reparations are not permissible where rates collected are sanctioned by orders of the *Railroad Commission,* it seems clear that prior to the order here under consideration the *Railroad Commission* had never sanctioned or established a rate for these movements.

It is further contended by appellant that the *Railroad Commission* had no power to authorize reparation of charges made between the date of the filing of the petition with the *Railroad Commission* and the date of its order, and that its power was limited to granting reparation for charges made prior to the time of the filing of the petition; that in order to collect for charges subsequently made, it was necessary for the *Paper Company* to file another petition. It should be borne in mind that the order of the *Railroad Commission* granting reparation, so called, amounts to nothing more than

authority to the railroad companies to make reparation. In order to enforce reparation an action in court is necessary. In that action an order of the *Railroad Commission* amounts to nothing more than *prima facie* evidence of the unreasonableness of the charge exacted. In this case appellant does not complain of the order of the *Railroad Commission* so far as it relates to reparations of charges made prior to the filing of the petition. It acquiesces in the unreasonableness of those charges. Neither does it complain that the charges fixed by the order of the *Railroad Commission* of April 27, 1926, are unreasonable. The contention that the *Railroad Commission* could not authorize reparation of charges made by the appellant during the time the proceedings were pending before the *Railroad Commission* is most technical and unreasonable. Such a contention might have been received by attentive ears a half century ago, but it is strikingly out of harmony with present-day efforts to rationalize legal procedure. Appellant argues for a tedious and cumbersome procedure wholly unnecessary to protect its rights and one not required by rules governing the procedure of courts. In *Smith v. Crucible S. C. Co.* 172 Wis. 308, 178 N. W. 566, plaintiff was permitted to prove such damages as he had sustained up to the time of trial, and the court expressly refused to limit him to proof of his damages up to the time of the commencement of the action. We see no reason for limiting the power of the *Railroad Commission* in the manner urged by appellant's counsel. It had all the facts before it necessary to enable it to determine the amount of reparation to which the shipper was entitled after as well as before the filing of the petition. This is a mere matter of procedure. It has been universally followed by the *Commission*. It affects no substantial right of the appellant. Appellant did not raise the question before the *Commission* upon a motion for a rehearing or an application for a correction of its order. It raised the question for the first time in the

circuit court.   It is plain that if the rate fixed by the *Commission* by its order of the 27th day of April, 1926, was reasonable, and the appellant does not challenge it, and that the *Paper Company* was entitled to reparation for charges made between February 1, 1924, and March 4, 1924, the date upon which the petition was filed with the *Railroad Commission,* and the appellant so concedes, the charges made between the date of the filing of the petition and the final order of the *Railroad Commission* were also exorbitant and subject to the same refund provided for the rates prior to March 4, 1924.   We hold that the filing of the petition conferred jurisdiction upon the *Railroad Commission* to authorize reparation of charges collected during the pendency of the proceedings as well as charges made prior to the filing of the petition.

*By the Court.*—Judgment affirmed.

ROSENBERRY, J., took no part.