STATE EX REL. NELSON, Appellant, vs. HENRY, State Treasurer, and another, Respondents.

*September 11—October 9, 1934.*

82

For the appellant there were briefs by *Hale & Burke* of La Crosse, and oral argument by *Quincy H. Hale.*

For the respondents there was a brief by the *Attorney General, Herbert H. Naujoks* and *Warren H. Resh,* assistant attorneys general, and oral argument by *Mr. Resh* and *Mr. Naujoks.*

FOWLER, J. The position of the relator is that he was a duly and permanently appointed and qualified deputy oil inspector under the civil service law on October 31, 1933; that at that time the state treasurer discharged him for the expressed reason that the department was reorganized; that the civil service law provides that an officer permanently appointed to a position under that law cannot be removed "except for just cause which shall not be religious or political;" that the reason for the attempt to remove him was political;

and that the attempted discharge was illegal and he is entitled to reinstatement.

The position of the respondents is that ch. 461, Laws of 1933 (hereinafter referred to as ch. 461), abolishing the office of state inspector of illuminating oils and creating in the treasury department of the state a bureau in charge of the state supervisor of inspectors under the general charge of the state treasurer, impliedly discharged all deputy oil inspectors and effected a reorganization of the oil inspection department of the state; that it does not appear that the relator became an oil inspector after that act went into effect, because the petition does not state that he was appointed as such by the state treasurer, or that he qualified as such by filing the oath and giving the bond prescribed by sec. 168.04; that permitting the relator to remain in performance of the duties of an oil inspector was in effect at most only a new original appointment; that under the civil service act original appointments are only temporary, and that appointees thereunder may be removed within six months for any reason satisfactory to the appointing officer, and that all the statutes require to effect removal is a notice from the appointing officer that the appointment will not be made permanent, and that the notice of discharge given the petitioner was equivalent to such notice.

The motion to quash the alternative writ of *mandamus* is in effect a demurrer and admits the allegations of fact contained in the petition. The petition alleges as a fact that the cause of the petitioner's removal was political. If in fact the cause of the removal was political, and as matter of law the relator was a permanently appointed deputy oil inspector at the time he was removed, the removal was illegal and he is entitled to reinstatement. The first question for determination therefore is whether the relator was holding the office of deputy oil inspector on October 31, 1933.

Under secs. 168.01 and 168.02, Stats. 1931, there existed the office of state supervisor of inspectors of illuminating oils. Sec. 168.03, Stats. 1931, provided for the offices of deputy inspectors and for their appointment by the state supervisor of inspectors of illuminating oils with the advice and consent of the governor. By said ch. 461 the office of state supervisor of illuminating oils was abolished and the office of state supervisor of inspectors was created. By abolishing the office of state supervisor of illuminating oils the person holding that office when the act went into effect was removed from office. But the mere abolishing of this office or the mere removal of the person holding it did not operate to abolish the office of deputy inspector of illuminating oils. That office existed under sec. 168.03, Stats. 1931. This section was not repealed by ch. 461 but merely amended, and the amendment only made the appointing officer of deputy inspectors the state treasurer instead of the supervisor of inspectors, and omitted the provision that the appointment should be made with the advice and consent of the governor. The new act left in force all provisions of the 1931 Statutes referring to deputy inspectors of oil except those referring to the officer previously appointing and supervising them. Sec. 168.01 provides that where in the statutes terms are used formerly referring to the officer whose office was abolished they shall be taken as referring to the newly-created state supervisor of inspectors, and that all provisions referring to deputy inspectors of illuminating oils shall apply to inspectors of the state inspection bureau engaged in oil inspection. It seems clear that the office of deputy inspector was not abolished by the new act. And it also seems clear that if the office was not abolished by the act, the person holding such office when the act went into effect was not removed by the act, unless by some provision of it other than those above mentioned.

Other provisions of ch. 461 relied on by the respondents as effecting the removal of the relator are sec. 109.01, creating the state inspection bureau, and sec. 109.03, which provides that the state inspection bureau and the state supervisor of inspectors shall succeed to the powers and duties of the state supervisor of inspectors of illuminating oils and the oil inspection department.

We do not perceive that placing oil inspection under the bureau effected a removal of any of the personnel of the oil inspection force. The provision that the newly-created inspection bureau and supervisor of inspectors should "succeed to all powers and duties imposed by law, . . . upon the state supervisor of inspectors of illuminating oils and the oil inspection department," merely imposed those duties upon the new bureau and the new officer. Those duties had to be performed by somebody. The officers, other than the supervisor, performing those duties must of necessity by force of their office continue to perform them else those duties would not be performed. The organization of the oil inspection department would of necessity continue until changed by the officers of the new bureau authorized to make changes. Unless otherwise indicated therein the act must be construed as contemplating and intending that the existing personnel would continue in their positions unless and until reorganization should abolish or change the duties of their positions. It is alleged that no material change has been made in the existing organization and that the personnel has not been reduced; that another person was put in the relator's position; that this other person was appointed to perform and is performing precisely the same duties that the petitioner was performing in precisely the same territory in which the petitioner was operating. These allegations of fact imply that there was in fact no reorganization of the department that abolished any of the duties the relator was performing or the office he was holding.

Another provision of ch. 461 that is relied on as indicating legislative intent that the existing deputy inspectors were removed by the act is contained in sec. 8 thereof which reads:

"All employees now employed in the department and bureaus affected by this act shall be eligible to appointment in the bureau created thereunder and shall be given preference in such employment and appointment."

It is urged that the reference to preference to appointment under the new act implies intent of removal by the act. We do not so regard the provision. In view of the necessity of the continuance of the performance of the duties imposed upon the new bureau without interruption by the officers at the time performing those duties, no new appointments would be required unless or until reorganization of the department should change the duties those officers were performing. We interpret this provision as applying only when such changes in duties and personnel were effected by reorganization as to require new appointments to be made, and it appears from the petition that no such changes have been made in respect to deputy oil inspectors. The provision by reasonable intendment applies to new positions created by reorganization and to positions abolished by reorganization, and provides that in such cases those occupying abolished positions shall be eligible to appointment to the new positions without the examination and certification regularly required for appointment to positions under the civil service law, and shall be given preference in making such appointment to such new positions over persons on the list for appointment through the civil service law. It must be borne in mind that ch. 461 placed several inspection departments of the state and all inspectors connected therewith under one head with manifest implied intent, and professed intent on the part of its sponsors, of working economies through reduction of personnel and expense of travel and subsistence by making one inspector perform the duties of two or more, each of whom under

existing regulations was performing a single limited and simple kind of inspection. Carrying out this intent would necessarily result in abolishing some inspectors' positions and changing the duties of some inspectors. But the oil inspection department, according to the petition, so far as its deputy inspectors are concerned, has not been affected by any reorganization made by the new bureau if any there has been, and the provision under consideration has no application to the position from which the relator has been removed, except to indicate that it was the intent of the legislature to keep the personnel of the oil inspection department of the state in service in case of reorganization so far as possible. It would be strange indeed if the provision under consideration operated to defeat its own purpose.

That the actual legislative intent of sec. 8, of ch. 461, was to protect existing employees in their positions appears from the history of the bill that resulted in its enactment. The original bill, No. 701A, did not contain sec. 8. A republican introduced sec. 8 as an amendment. A democrat moved to strike from the section the provision respecting giving "preference in such employment and appointment." This proposal was rejected and sec. 8 was enacted as originally proposed. The intent of the legislature to protect existing employees against displacement for political reasons is thus clearly evidenced. This intent is further evidenced by the action of the legislature in subsequently defeating bill No. 8S, introduced in the senate by a democrat to repeal the entire civil service act. The legislature by these several actions plainly forbade the discharge for political reasons of the personnel of the several departments affected by ch. 461, and what was thus made illegal cannot be made legal by subterfuge.

The contentions of counsel for respondents stated in the second paragraph of this opinion all fall with their proposition that ch. 461 removed the relator from the office. If, as

we hold, his office continued after the act went into effect and the act did not remove him from that office, then a new appointment by the state treasurer or the filing of any oath or bond was not necessary, and he was not an original appointee holding temporarily, but a permanent appointee by virtue of his prior appointment and qualification, and only subject to removal for just cause not political and upon notice. As by the allegations of the petition his removal was political, the order of the circuit court quashing the alternative writ must be reversed, unless, as further contended by counsel for the respondents, the writ was properly denied because it does not lie to control, discretionary acts of administrative officers. The premise that the writ will not issue to control such acts is correct. But the conclusion that it should not issue in this case is erroneous because the state treasurer has no discretion to remove for political reasons permanent officers protected by the civil service. Sec. 16.24, Stats. It is true that by this section such officers may be removed "in case of a reduction in force . . . because of material change in duties or organization;" but, as we have already stated, the petition alleges there has been neither reduction of personnel nor material change in the organization of the oil inspection department and these allegations are admitted by the motion to quash.

*By the Court.*—The order of the circuit court is reversed. No costs allowed.