THE STATE EX REL. BOARD OF EDUCATION OF THE CITY OF SUPERIOR, Respondent, vs. HUNTER, City Treasurer, Appellant.

*September 27 — October 15, 1901.*

*Taxation: County board: Levy of school tax in city: Voluntary payment: Mandamus: Act not due: Demurrer: Pleading over.*

1. Whether or not secs. 1074–1076, Stats. 1898, authorize the levy by the county board of a school tax upon a city authorized by law to levy its own school taxes (a question not determined), if the taxpayers voluntarily pay a tax so levied it becomes a part of the school funds and should be dealt with by the treasurer as such.

2. *Mandamus* will not lie to compel performance of an act by a public officer unless the act be one that is actually due from the officer at the time of the application.

3. Upon the overruling of a demurrer to an alternative writ of *mandamus* the defendant should be allowed to make a return upon terms.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

This was an action of *mandamus*, brought against the city treasurer of the city of Superior for the purpose of compelling him to set aside out of the taxes to be collected by him for the year 1900 certain amounts for school purposes. The petition for the writ, which was filed January 30, 1901, after alleging the corporate character of the board of education, and its duties with reference to the schools under the charter of the city of Superior (ch. 152, Laws of 1889), further alleges, in substance, that in pursuance of its power and duty the said board did, September 26, 1900, levy the sum of $135,000 upon the taxable property of the city of Superior for school purposes, and that the amount of such levy was entered on the tax roll of the city for the year 1900, and that *R. L. Hunter*, the city treasurer of said city, has been, by warrant duly issued, commanded to collect said sum, and that the said treasurer is now in the act of collecting the same; that *R. L. Hunter* is the city treasurer of said

city, and by provisions of the charter is *ex officio* the treasurer of the board of education, and that it is his duty to keep in a separate fund all school moneys, whether levied by the state, county, or city, and keep a detailed account thereof, and pay out the same upon orders of the board of education; that the county board of Douglas county, in pursuance of its duty, determined the amount of taxes to be raised by each town and city in the county for the year 1900, and that the county clerk apportioned the amount to be so raised in the city of Superior at the sum of $7,732.73, and on November 24, 1900, said county clerk delivered to the city clerk of said city a certificate and statement of the taxes apportioned and levied on the city of Superior for said county and school tax purposes, in which statement the sum of $7,732.73 was included as a county school tax to be collected and retained by the city of Superior; that on December 15, 1900, said city clerk delivered to the defendant, as treasurer, a warrant for the collection of all the general taxes for the year 1900, by which said treasurer was directed to collect the same, and pay to the treasurer of said county the sum of $25,520.62 for state taxes, then to retain and pay out as city treasurer the sum of $368,998.75, and to pay to the treasurer for county purposes, on or before March 1st, the balance of the moneys collected,— attached to said warrant being a statement of the various items and taxes to be raised, among which was an item of county school tax, $7,732.73, in addition to the general school tax item of $135,000; that said city treasurer is in the act of collecting the taxes named in said warrant and statement, and that he will have collected in cash, as petitioner believes, sufficient taxes, before he is required to make the delinquent return to the county treasurer, to pay in full the state tax, the county school tax of $7,732.73, the general school tax of $135,000, and also a library tax of $5,500; that it is the duty of said treasurer first to pay to the county treasurer the state tax, then to set aside the sum

of $7,732.73, known as the "county school tax," and the further sum of $135,000, being the school tax levied by the board of education, and the further sum of $5,500 for library tax, before setting aside any sums for any other purposes of any kind; that said *R. L. Hunter* was the treasurer of the city of Superior for the year 1899, and that the county school tax for that year amounted to $7,154.91, and the district school tax to $110,000; that the whole amount of taxes for that year was $476,463.84, and that the city treasurer collected in cash $395,378.01, out of which the city treasurer, if he complied with the laws, should have paid the state tax and retained in his own hands the amount of the county school tax, and district school tax, and the library tax, and still have other moneys to apply for all other city taxes, and to pay in cash to the county treasurer a large sum on account of county taxes, but that, in neglect of his duty as such treasurer, he neglected to retain in his hands the said county school tax, but appropriated the same, and credited the same to other funds, and only applied to school purposes the sum of $4,500 thereof; that said *Hunter* now claims the right to set apart for the use of the city all taxes for city purposes prior to setting apart the said sum for county school taxes, and threatens so to do, and that petitioner believes that he will not consider said county school tax as a part of the sums levied for school taxes, and will not pay them over for school purposes until all the amounts levied for other city purposes are first paid and collected; that by reason of said *Hunter's* refusal to set apart the county school tax for the year 1899 out of the first moneys received by him said school board has been deprived of the use of said sum, and obliged to borrow money for the use of said schools, and that said *Hunter* will, unless otherwise ordered, refuse to set aside out of the moneys which he has collected and will have collected before returning his delinquent list to the county treasurer, said sum of $7,732.73, and that said school

board will thereby be deprived of the use of the same for school purposes. The petition prayed for a peremptory writ of *mandamus* requiring said *Hunter*, after the payment of the state tax, to set aside the two sums levied for county school tax and district school tax, amounting in all to $142,732.73, and the further sum of $5,500 for library tax, as soon as sufficient taxes are collected, and place the same to the credit of the *Board of Education of the City of Superior.*

The petition was verified by L. A. Nichols, secretary of the board of education, and an alternative writ of *mandamus* was issued thereon, whereupon the defendant moved to quash said alternative writ on the ground of insufficiency of facts, and also demurred upon the ground that upon the face of the petition and upon the face of the alternative writ no facts are stated sufficient to constitute a cause of action. The motions and demurrer were argued together, and were both overruled, and judgment entered awarding a peremptory writ of *mandamus* requiring the city treasurer, after payment of the state tax, to set aside the school tax and the library tax as soon as sufficient moneys therefor are collected, and place the school tax to the credit of the board of education. A peremptory writ of *mandamus* was issued in accordance with the judgment, and from this judgment the defendant appeals.

For the appellant there was a brief by *Archibald McKay* and *Geo. B. Hudnall,* and oral argument by *Mr. Hudnall.*

For the respondent there was a brief by *Knowles & Knowles,* and oral argument by *Edwin Knowles.*

WINSLOW, J. By the charter of the city of Superior (ch. 124, Laws of 1891), the board of education of the city is made a body corporate, and endowed with authority to manage and control the public schools of the city, and for that purpose to levy all necessary taxes. These taxes are

State ex rel. Board of Education of Superior vs. Hunter.

collected by the city treasurer in the same roll and under the same warrant as other general taxes. The city treasurer is made the treasurer of the board of education, and is required to receive all the public school funds, whether raised by the state, the county, the city, or district, as a separate fund, and pay the same out only upon the order of the board of education. By sec. 111 of the charter the city treasurer is required, out of the taxes by him collected, to first pay the state tax to the county treasurer, and then to "set aside all sums of money levied for school and library purposes," then taxes to pay the principal and interest on the public debt, then taxes for various other municipal purposes in order, and finally to pay the county taxes. It appears by the petition for the writ that in the year 1900 the board of education levied a tax of $135,000 for school purposes, that the county board of supervisors thereafter apportioned to the city the additional sum of $7,732.73 to be raised by the city for school purposes, and that both of these sums were placed in the tax warrant issued to the city treasurer, and that at the time of the filing of the petition the city treasurer was "in the act of collecting the same." It is further stated in the petition that in the previous year the sum of $7,154.91 was apportioned by the county board to be raised as an additional school tax by the city, and that the appellant, *Hunter*, then being the city treasurer, refused and neglected to retain in his hands, as treasurer of the school funds, the whole of said county school tax, but only retained $4,500 thereof for school purposes, and paid over the balance of said fund to the county treasurer, and that he now claims the right and threatens to set apart for other city uses all other taxes raised for city purposes prior to setting apart said sum of $7,732.73 for school purposes. It is not alleged that the treasurer has ever failed to properly set aside or account for the sums levied for school purposes by the board of education, or that he threatens now to do so, but

the gravamen of the petition is simply that he threatens to divert from its proper use a part of the so-called "county" school tax when it is collected by him.

It is argued on behalf of the appellant that this "county" school tax is an illegal and unauthorized tax, that it may never be collected, and hence that on this ground no writ of *mandamus* should issue in any event. This "county" school tax was levied in supposed conformity with secs. 1074–1076, Stats. 1898, which provide, in substance, that the county board of supervisors, at their annual meeting in November of each year, shall determine the amount of taxes to be levied for county purposes for the year, and the amount to be raised by each town for support of common schools, and that the county clerk shall apportion said county tax among the towns, cities, and villages of the county, and carry out the sums so apportioned, as well as the school tax to be raised as aforesaid, opposite the name of each of said towns, cities, and villages, and certify the same to the clerk of each of such towns, cities, or villages. The appellant's contention is that, so far as school taxes are concerned, these sections relate only to towns, and were not intended to, and do not in fact, authorize the levy by the county board of school taxes upon a city which is authorized by law to levy its own school taxes, as is the case with the city of Superior. The question so raised is a serious one, but we do not find it necessary, for reasons hereafter stated, to decide it in this action. Conceding that the tax was not authorized by law, still, if the taxpayers paid the same voluntarily, so that it reached the hands of the treasurer, no reason is perceived why the same would not become a part of the school funds in the hands of the treasurer upon the same footing as other school funds. *State ex rel. School Directors v. Nelson,* 105 Wis. 111.

But here arises the serious difficulty with the petitioner's case. It is nowhere alleged that this sum has come into

State ex rel. Board of Education of Superior vs. Hunter.

the hands of the city treasurer; in fact the petition distinctly negatives such fact by alleging that the treasurer "is in the act of collecting" the taxes named in his warrant, and will collect sufficient sums to pay in full the state taxes and school taxes before he is required to make his delinquent return to the county treasurer. We have no means of knowing whether the treasurer, at the time of the filing of the petition, had collected a dollar properly applicable to the extinguishment of the so-called "county" school tax. Clearly, the treasurer is under no duty to set aside any moneys for school purposes until he has collected them. The general principle is frequently stated that *mandamus* will not lie to compel performance of an act by a public officer unless the act be one that is actually due from the officer at the time of the application. Until the time arrives when the duty should be performed, there is no default of duty; and mere threats not to perform the duty will not take the place of default. The writ is not granted to take effect prospectively. Spelling, Extraordinary Relief, § 1385; High, Extr. Leg. Rem. (3d ed.), §§ 12, 36; Tapping, Mandamus, 10; Wood, Mandamus (2d ed.), 51; 14 Am. & Eng. Ency. of Law (1st ed.), 105. The great weight of decision and textbook authority supports this very reasonable rule. The evils which would result from a practice which allowed courts to step in at any time by *mandamus* and direct the future action of a public officer on the assumption that he will disregard his legal duty are so patent that they do not need to be enlarged upon. The case of *Att'y Gen. v. Boston*, 123 Mass. 460, is cited and relied upon as authority for the issuance of the writ to control prospective action, and such in fact it seems to be. The case is, however, peculiar in its facts, and we are not inclined to regard it as of sufficient weight to justify departure from the general rule. Extreme cases may, perhaps, arise demanding the use of *mandamus* to control the performance of prospective duties; but this is certainly not such a case.

The appellant complains because upon the overruling of the demurrer and motion to quash judgment was immediately entered without notice and without leave being given to make a return. In the view we have taken of the case the objection becomes immaterial, but it seems proper to observe that we see no good reason why the usual practice of allowing a return to be made upon terms after the overruling of a demurrer should not have been followed.

*By the Court.*— Judgment reversed, and action remanded with directions to sustain the motion to quash the alternative writ.