STATE EX REL. SULLIVAN, Respondent, vs. HAUERWAS and others (BOARD OF ELECTION COMMISSIONERS OF MILWAUKEE COUNTY), Appellants.

*February 15—February 17, March 8, 1949.*

338

For the appellants there was a brief by *William J. McCauley*, district attorney of Milwaukee county, and *Oliver L. O'Boyle*, corporation counsel, and oral argument by *Mr. O'Boyle*.

*Michael T. Sullivan*, respondent, *in pro. per.*

BROADFOOT, J. The questions involved are as follows: (1) May the Milwaukee County Board of Election Commissioners refuse to print upon the judicial primary ballot the name of a proposed candidate for circuit judge who admittedly will not have attained the age of twenty-five years on the dates of either the primary or the general election for such office? (2) Does sec. 10, art. VII, of the Wisconsin constitution require that to be eligible to the office of circuit judge a person must have attained the age of twenty-five years at the time of his election? (3) Did the trial court abuse its discretion in issuing the writ?

Question (1) must be answered in the negative. The opinion in the case of *State ex rel. Barber v. Circuit Court*, 178 Wis. 468, 478, 190 N. W. 563, supplies the answer to this question. In that case the court said:

"A careful search of the entire body of statutory law fails to disclose any attempt on the part of the legislature to require that the name of a person so certified shall be that of a person eligible to hold the office for which he is a candidate. While the residence and qualifications of persons nominating another for a place upon the primary ballot are carefully prescribed, no such limitation is placed upon the right of a person to be a candidate for office. If, in the face of this legislative enactment, the court may step in and assert that a candidate whose name has been thus certified and who by the clear language of the statute is entitled to a place upon the ballot may be deprived of that right because if elected he will be ineligible to hold the office for which he is a candidate, the court then prescribes the conditions, or at least one of the conditions, under which or in compliance with which a candi-

date may have his name appear upon the ballot. If the court should do this in the absence of legislative declaration to that effect, it would clearly invade the legislative field, and that, too, in respect to the exercise of a purely political right by an elector. The official ballot is a creation of the legislature unknown to the constitution. The right of a candidate to have his name appear thereon is one created by the legislature. Until the legislature, in the exercise of its power to regulate the exercise of the right of franchise, has prescribed as a part of the qualifications of a person who is seeking a place upon the official ballot that he shall be eligible to the office for which he is a candidate, neither the courts nor any administrative officer can so limit his right."

The Milwaukee County Board of Election Commissioners is an administrative body and may perform only those functions delegated to it by the legislature. It has no authority to make findings of fact where the statutes are silent, and it has no authority to determine questions of law. The nomination papers were admittedly proper in every respect and the relator has a legal right to have his name appear upon the primary judicial ballot even though he may not be eligible for the office if elected. The result in the case of a candidate who would not be qualified to take office if elected is unsatisfactory, but it is a matter for legislative action and in the absence of such legislative action neither the appellants nor the courts may invade the legislative field.

Questions (2) and (3) must be considered together. In his petition the relator asked for a peremptory writ of mandamus. Mandamus is a summary, drastic, and extraordinary writ issued in the sound discretion of the court. Although classed as a legal remedy, mandamus is equitable in its nature and its issuance is generally controlled by equitable principles. The rights of the public and of third persons may be considered.

"It is a fundamental principle that courts will not employ their coercive process to compel the doing of a useless thing. Particularly is this true with respect to such a summary and

expeditious process as mandamus. The writ is invariably withheld where it would be unavailing, nugatory, or useless and its issuance an idle act." 34 Am. Jur., Mandamus, p. 831, sec. 37.

"While as a rule the writ of mandamus should issue to enforce a clear legal right, it is a discretionary writ and may be withheld where its issuance will work confusion or lead to inequitable results." *State ex rel. Horton v. Brechler,* 185 Wis. 599, 608, 202 N. W. 144.

The question of eligibility raised by the relator had never been determined by this court. The relator claimed that prior to 1912 the last sentence of sec. 10, art. VII, Const., read as follows:

"No person shall be eligible to the office of judge who shall not, at the time of his election, be a citizen of the United States, and have attained the age of twenty-five years, and be a qualified elector within the jurisdiction for which he may be chosen."

This section was amended in 1912, and following such amendment, the relator claimed, this sentence read as follows:

"No person shall be eligible to the office of judge who shall not, at the time of his election, be a citizen of the United States and have attained the age of twenty-five years, and be a qualified elector within the jurisdiction for which he may be chosen."

He argued that the omission of the comma after the words "United States" and before the word "and" indicated a legislative intent and an intent on the part of the voters of the state at the time of the referendum election to take the limitation as to age out of apposition with the clause "time of his election" and refer it to the clause "office of judge" and that the age qualification following the 1912 amendment referred to eligibility at the time of taking office and not at the time of election.

We shall not discuss the point of grammar raised by relator, because it is evident from the legislative history of the matter that the legislature had no intention to propose any amendment or change to the portion of sec. 10, art. VII,

Const., under consideration here. Joint Resolution No. 34 was adopted by both houses of the legislature in 1909 and the object of the resolution was "to amend section 10, article VII of the constitution, relating to the salary of judges." At that time this section of the constitution contained the following provision: "Each of the judges of the supreme and circuit courts shall receive a salary, payable quarterly. . . ." The proposed change in the resolution was to strike out the word "quarterly" and to insert in place thereof "at such time as the legislature shall fix." In the resolution as introduced the comma was retained in the last sentence following the words "United States;" as adopted the comma was omitted. In the 1911 legislature the subject matter was covered by Joint Resolution No. 24. The comma was retained both in the resolution as introduced and as enacted. Ch. 665, Laws of 1911, provided for the submission of this constitutional amendment to a referendum vote. In that chapter also the comma was retained. It is apparent that the purpose of the proposed amendment was not to change the sentence of sec. 10, art VII, of the constitution dealing with eligibility to the office of judge. So far as the proposals of the legislature were concerned the comma was a matter of indifference—sometimes left out but ultimately retained. Under these circumstances we conclude that it has no bearing upon the meaning of the sentence or any significance whatever. Consequently, question (2) is answered in the affirmative.

The final question is whether the trial court abused its discretion in issuing the writ of mandamus prayed for. The relator had a legal right to have his name appear upon the ballot. Had question (2), heretofore discussed, been previously decided by this court so as to put it out of the field of debate, relator's legal right would be a completely naked one and the court could then have considered as bearing upon the exercise of its discretion the effect of the order upon the other candidates for the office, the rights of electors, the fact that the presence of relator's name on the ballot would be of

no use to him, and that it would promote confusion and lead to inequitable results. Under these circumstances it would be proper for the court to deny the writ under the doctrine of the *Horton Case, supra.* Since, however, the question had not been determined by this court and relator's eligibility was fairly within the field of debate we hold that it was within the discretion of the trial court to vindicate the legal right of relator by issuance of the writ.

Because of the time involved and the public interest in the question the court announced its decision of the questions involved on the 17th day of February, 1949, as previously stated.[1]

FAIRCHILD, J. (*dissenting*). The relator is disqualified by reason of his age. The constitution requires that a circuit judge be twenty-five at the time of his election. It is admitted that relator will not have attained that age at the time of the election in which he wishes to be a candidate for such office. This being established it was impossible for him to show a specific right entitling him to have his name on the ballot at the primary or at the election. This will not prevent any elector from exercising his franchise in any way he chooses even to the extent of casting a useless vote. We are considering only the lack of a right in the relator to the writ of mandamus.

The principles which influence my opinion are those recognized as the law in *State ex rel. Dunning v. Giles,* 2 Pin. 166; *State ex rel. Holden v. Tierney,* 23 Wis. 430; *People ex rel. Furman v. Clute,* 50 N. Y. 451. In *State ex rel. Smith v. Drake,* 83 Wis. 257, 261, 53 N. W. 496, it was said: "The writ will not issue to compel the performance of what would be unlawful, . . . or to enforce what would be without authority of law." See also *State ex rel. Bancroft v. Frear,* 144 Wis. 79, 128 N. W. 1068.

---

[1] The decision and mandate announced on February 17, 1949, are not printed because fully covered by the above formal opinion filed March 8, 1949. REPORTER.